UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Keyon Robinson, #31823, | ) | C/A No. 5:16-cv-00560-BHH-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Lt. Moore; | ) | |
| Warden Bernard McKee; | ) | |
| A. W. Joyner; | ) | |
| Ms. Earle; | ) | |
| Captain Brightheart, and | ) | |
| Warden Thompson, | ) | |
| | ) | |
| Defendants. | ) | |

This is a civil action filed pro se by a state prison inmate. Pursuant to 28 U.S.C. § 636(b)(1), and Local Civil Rule 73.02(B)(2)(e) (D.S.C.), this magistrate judge is authorized to review all pretrial matters in such pro se cases and to submit findings and recommendations to the district court. *See* 28 U.S.C. §§ 1915(e); 1915A (as soon as possible after docketing, district courts should review prisoner cases to determine whether they are subject to summary dismissal).

I.    Factual Background

Keyon Robinson ("Plaintiff"), an inmate in the custody of the South Carolina Department of Corrections ("SCDC"), alleges that his constitutional rights under the First and Fourteenth Amendments were violated between late September 2013 and June 1, 2014 by Defendants when he was placed on "lock up,"—which he also calls "SD" and "security detention," Compl. 3-4, ECF No. 1—and Defendant Earle told him that he was there because of "a charge from Greenville County . . . ." *Id*. at 3. Plaintiff alleges that he was never convicted of that Greenville charge and states that he complained to Defendants Moore, Joyner, and McKee about being held

in lock-up because he was unable to have visitors or phone calls. *Id*. He further alleges that after he was transferred to a different institution in March 2014, he was again placed on lock-up for the same reason Defendant Earle had placed him on lock-up. Plaintiff also alleges he complained to Defendants Brightharp and Thompson at Lieber prison, but only got limited relief through the use of a telephone, but still got no visitation privileges. *Id*. at 4. Plaintiff seeks compensatory and punitive damages.

II.     Standard of Review

Under established local procedure in this judicial district, a careful review has been made of Plaintiff's pro se Complaint filed in this case. This review has been conducted pursuant to the procedural provisions of 28 U.S.C. §§ 1915, 1915A, and the Prison Litigation Reform Act of 1996, and in light of the following precedents: *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden*, *Md. House of Corr.*, 64 F.3d 951 (4th Cir. 1995); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983); *Boyce v. Alizaduh*, 595 F.2d 948 (4th Cir. 1979).

Pro se complaints are held to a less stringent standard than those drafted by attorneys, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), and a federal district court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). When a federal court is evaluating a pro se complaint, the plaintiff's allegations are assumed to be true. *De'Lonta v. Angelone*, 330 F.3d 630, 630 n.1 (4th Cir. 2003). Nevertheless, the requirement of liberal construction does not mean that this court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). Even under this less stringent standard, the Complaint

filed in this case is subject to summary dismissal under the provisions of 28 U.S.C. § 1915(e)(2)(B).

III.   Discussion

Plaintiff's Complaint allegations fail to state plausible claims relating to his being housed in security detention or the resulting denial of visitors because a prisoner has no constitutional right to any particular classification or to visits from persons from outside the prison while he is incarcerated. The South Carolina Code of Laws vests exclusive authority relating to the care and housing of prisoners in the SCDC Director and places no limitations on official discretion. *See* S.C. Code Ann. §§ 24-1-130, 24-1-140, 24-3-20, 24-3-30. Federal courts are required to accord great consideration to a correctional system's need to maintain order, discipline, and control, *see Wolff v. McDonnell*, 418 U.S. 539, 558-62 (1974), and it is well established that there is no constitutional right for a state prisoner or federal prisoner to be housed in a particular institution, at particular custody level, or in a particular portion or unit of a correctional institution. *Olim v. Wakinekona*, 461 U.S. 238 (1983); *Ange v. Paderick*, 521 F.2d 1066 (4th Cir. 1975); *Lyons v. Clark*, 694 F. Supp. 184, 187 (E.D. Va. 1988) (collecting cases). In other words, the placement and assignment of inmates into particular institutions or units by state or federal corrections departments are discretionary functions, and, generally, are not subject to review *unless* state or federal law places limitations on official discretion. *Hayes v. Thompson*, 726 F.2d 1015, 1016-17 (4th Cir. 1984) (collecting cases).

As other cases in this district have found, South Carolina law confers no protected liberty interest upon SCDC inmates from being classified or being placed in administrative segregation in a particular prison or in a particular section of a prison. *See*, *e.g.*, *Keeler v. Pea*, 782 F. Supp. 42, 43-44 (D.S.C. 1992) (citing *Meachum v. Fano*, 427 U.S. 215 (1976)); *Vice v. Harvey*, 458 F.

Supp. 1031, 1034 (D.S.C. 1978); *Sheffield v. Edwards*, No. 9:07-3550-JFA-GCK, 2008 WL 4200442, at * 14 (D.S.C. Sept. 3, 2008). In fact, it is well settled that the placement of inmates into administrative segregation units or similar units is a valid of means of minimizing a "threat to security of the institution, threat to the safety of other residents or Jail staff, etc." *Jackson v. Bostick*, 760 F. Supp. 524, 528 (D. Md. 1991); *see Hewitt v. Helms*, 459 U.S. 460, 468 (1983) ("The transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence."); *see also Montanye v. Haymes*, 427 U.S. 236, 242 (1976) (if a prisoner's confinement is within terms of the sentence imposed upon him and does not violate other constitutional provisions, "the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight"). In other words, because Plaintiff was committed to the custody SCDC, the choices of where and how Plaintiff is to be confined are to be determined by SCDC.

While it seems Plaintiff would prefer he had been placed in another section of the Kirkland and Lieber Correctional Institutions, his placement in security detention at both Kirkland and Lieber did not violate Plaintiff's federally guaranteed constitutional rights. *See Wolff v. McDonnell*, 418 U.S. at 558-62; *Mann v. Leeke*, 73 F.R.D. 264, 265-267 (D.S.C. 1974); *Ramey v. Hawk*, 730 F. Supp. 1366, 1372 (E.D. N.C. 1989); *see also Cooper v. Riddle*, 540 F.2d 731, 732 (4th Cir. 1976) (*citing Meachum v. Fano*: federal courts are not "to assume the role of super wardens of state penal institutions").

Furthermore, Plaintiff's conclusory contention that his security detention and the resulting denial of visitation were violations of his constitutional guarantee of equal protection does not state a plausible constitutional claim. The Equal Protection guarantee does not deprive the government of all power of classification. *See Personnel Admin. v. Feeney*, 442 U.S. 256,

4

271 (1979). However, it does "'keep[] governmental decisionmakers from treating differently persons who are in all relevant respects alike.'" *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2000) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). Unless it provokes strict judicial scrutiny, a governmental practice that distinguishes among classes of people will typically survive an equal-protection attack so long as the challenged classification is rationally related to a legitimate governmental purpose. *Kadrmas v. Dickinson Pub. Sch.*, 487 U.S. 450, 457-58 (1988). Such a practice will not require strict judicial scrutiny unless it interferes with a "fundamental right" or discriminates against a "suspect class" of individuals. *Id.*

Plaintiff has not alleged that he is a member of a suspect class or that he was denied a fundamental right; thus, strict scrutiny is not required here. Therefore, in order for Plaintiff to state a plausible equal-protection claim, he must allege that he is a member of a class that was denied a benefit available to other similarly situated individuals and that such a denial is not rationally related to legitimate state interests.

> [M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees. "[C]entral to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves." Prison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel and to prevent escape or unauthorized entry. Accordingly, we have held that even when an institutional restriction infringes a specific constitutional guarantee, . . . the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security.

*Bell v. Wolfish*, 441 U.S. 520, 546-47 (1979) (footnote and citations omitted).

As Plaintiff had been deemed a security risk, under *Bell v. Wolfish*, he cannot show that his classification is not "rationally related to a legitimate governmental purpose." Hence, to the extent that he seeks damages for his period of confinement in security detention, his equal-protection claim is without merit. *See Allgood v. Morris*, 724 F.2d 1098, 1101 (4th Cir. 1984)

(finding no equal protection violation in protective segregation "where the differences in treatment among prisoners in protective segregation and in the general population ha[d] a substantial, rational basis in the legitimate state interest of prison security"); *In re Long Term Admin. Segregation of Inmates Designated as Five Percenters*, 174 F. 3d. 464, 471-72 (4th Cir. 1999) (placement in long-term segregation for valid prison security purpose does not violate equal protection or eighth amendment rights); *see also Grate v. Huffman*, No. 7:07-cv-00449, 2007 WL 3275151, *2, 3 n.4 (W.D. Va. Nov. 5, 2007) (placement in protective custody does not *per se* violate the eighth amendment or the equal protection clause).

Finally, to the extent that he seeks damages for SCDC's prohibition of visitation with family members or others from outside the prison during the period of Plaintiff's confinement in security detention or for asserted first-amendment, due-process, or equal-protection violations arising from the denial of phone privileges, Plaintiff fails to state plausible claims. The applicable law is well settled that, generally, there is no per se "liberty interest" or other constitutional "right" to any type of visitation for prisoners. *See Williams v. Ozmint*, 716 F.3d 801, 806-07 (4th Cir. 2013); *Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989) (due process).

Additionally, the Fourth Circuit, this court and several other district courts within the Fourth Circuit have found "there is no constitutional or federal statutory right to use of a telephone while in prison." *United States v. Alkire*, 82 F.3d 411 (4th Cir. 1996) (unpublished); *Paylor v. Lewis*, No. 5:12-CT-3103-FL, 2016 WL 1092612, at * 9 (E.D.N.C. Mar. 21, 2016) (no constitutional right to unlimited telephone access); *Chestnut v. Brown*, No. CIV.A. 3:11-1227-RMG, 2012 WL 3230663, at *3 (D.S.C. June 19, 2012) *report and recommendation adopted,* No. CIV.A. 3:11-1227-RMG, 2012 WL 3230527 (D.S.C. Aug. 3, 2012) (same); *McGaha v.*

*Baily*, No. CA 6:11-1477-RMG, 2011 WL 2669458, at *2 (D.S.C. July 7, 2011) (summarily dismissing claim regarding access to legal materials on the internet) (quoting *Holloway v. Magness,* No. 5:07CV00088 JLH–BD, 2011 WL 204891, at *7 (E.D. Ark. Jan. 21, 2011) (First Amendment does not require "that the government provide telephones, videoconferencing, email, or any of the other marvelous forms of technology that allow instantaneous communication across geographical distances; the First Amendment is a limit on the exercise of governmental power, not a source of positive obligation.")); *Coil v. Peterkin*, No. 1:07CV145, 2009 WL 3247848, at *10 (M.D.N.C. Oct. 5, 2009) (no constitutional right to unlimited telephone access), *aff'd*, 401 F. App'x 773 (4th Cir. 2010); *see also Barbati v. Bureau of Prisons*, No. CIV.A. 5:11-0778, 2012 WL 4119300, at *6 (S.D.W. Va. Aug. 22, 2012), *report and recommendation adopted*, No. 5:11-CV-00778, 2012 WL 4119865 (S.D.W. Va. Sept. 19, 2012) (recognizing a first-amendment right to some communication with the outside world, but noting no constitutional right to telephone access and finding summary dismissal appropriate); *see also Shue v. Herring*, No. 104CV1012, 2006 WL 3940554, at *5 (M.D.N.C. Jan. 9, 2006) (addressing first-amendment claim, but finding restrictions on telephone access were reasonable).

Here, Plaintiff provides no factual allegations that would require this court to apply some exception to the established law stated above. Instead, he makes unsupported statements of legal conclusions of "violation of first amendment rights for visitation and phone use/violation of due process-violation of equal protections clause." ECF No. 1 at 2. Factually unsupported legal conclusions are inadequate to state a plausible claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 668-69 (2009) (the reviewing court need only accept as true the complaint's factual allegations, not its legal conclusions); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (pro se complaint

7

must still contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face.").

IV.     Recommendation

Accordingly, it is recommended that the district court dismiss the Complaint in this case *without prejudice. See Brown v. Briscoe*, 998 F.2d 201, 202-04 (4th Cir. 1993); *see also* 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A (as soon as possible after docketing, district courts should review prisoner cases to determine whether they are subject to summary dismissal).

IT IS SO RECOMMENDED.

*Kaymani D. West*

March 25, 2016                                                          Kaymani D. West
Florence, South Carolina                                         United States Magistrate Judge

**The parties are directed to note the important information in the attached**

**"Notice of Right to File Objections to Report and Recommendation."**

8

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk
United States District Court
Post Office Box 2317
Florence, South Carolina 29503**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).